## In the Matter of the Proceedings against JOHN JAY DICKINSON.

*Witness — County treasurer subpœnaed before a board of supervisors of a county, pursuant to the provisions of section 3, chapter 190, Laws of 1858, when not compelled to answer questions put to him.*

A county treasurer who appears before a committee appointed by the board of supervisors of a county, in obedience to a subpœna issued by the chairman of such committee, in accordance with the provisions of section 3 of chapter 190 of the Laws of 1858, cannot be compelled to answer interrogatories concerning moneys in his hands as county treasurer, when he claims that such answers might subject him to a criminal prosecution, or to a penalty or forfeiture.

The witness is exempt from answering because, by the Revised Statutes (*vol. 3 of 6th edition, page* 671, *section* 171) and the common law, no witness can be required "to give any answer which will have a tendency to accuse himself of any crime or misdemeanor, or to expose him to any penalty or forfeiture."

The act of 1858, under which these proceedings are had, does not prevent the evidence to be given by the witness from being used by the governor for his removal, and, therefore, the rule that a witness "is not bound to speak when the answer may subject him to a forfeiture, *or any thing in the nature of a forfeiture,* of his estate or interest," applies and exonerates the witness from answering the questions propounded.

*Quære,* as to the constitutionality of the statutes conferring the power on boards of supervisors or its committees to compel the giving of testimony (*See Matter of Pilsbury,* 56 *How.*, 290).

*Special Term, December,* 1879.

APPLICATION to judge WESTBROOK to punish Dickinson for contempt in refusing to answer certain questions put to him by a committee of the board of supervisors of Schoharie county.

*Mr. Krum,* for application.

*Mr. Mayhem,* opposed.

WESTBROOK, *J.* — Dickinson is the county treasurer of Schoharie county. At its annual session in 1879, the board of supervisors of that county appointed a standing committee on the county treasurer's accounts. Upon a special report of such committee it was authorized by the board of supervisors, under section 3 of chapter 190 of the Laws of 1858, to send for persons and papers, and to examine the county treasurer's accounts.

The county treasurer, in obedience to a *subpœna* issued by the chairman of the committee, appeared before it, but declined to answer certain questions concerning the moneys received by him, upon the ground that the answers would tend to convict him of a crime or subject him to a penalty or forfeiture.

Under section 4 of the act aforesaid an attachment was issued by the judge writing this opinion, and on December 18, 1879, Dickinson was brought before such judge, and the question presented is, could Dickinson be compelled to answer interrogatories concerning moneys in his hands as county treasurer, when he claims that such answers might subject him to a criminal prosecution, or to a penalty or forfeiture.

Section 6 of article 1 of the Constitution of this state, which declares that no person " shall be compelled, in any criminal case, to be a witness against himself " is clearly inapplicable, because the proceeding before the committee was not a " criminal case." This is too plain for argument.

It was further urged, however, that the witness was exempt

from answering because, by the Revised Statutes (*vol. 3 of 6th edition, page* 671, *section* 117) and the common law, no witness can be required "to give any answer which will have a tendency to accuse himself of any crime or misdemeanor, or to expose him to any penalty or forfeiture."

In *People* agt. *Haskley* (24 *N. Y.*, 73, *see pages* 82, 83) it was held that if there was no statute provision protecting the witness against the effects of his testimony he could not be compelled to answer, but when he was protected he could not decline to respond.

By section 9 of chapter 190 of the Laws of 1858 (that under which the examination was sought to be made) it is provided : "But the testimony of any witness examined under the provisions of this act shall not be given in evidence or used against him on the trial of any indictment or criminal prosecution, other than for perjury committed on such examination."

The counsel for the county treasurer insists that the evidence given before the committee of the board of supervisors could be used against him before the governor on a proceeding to remove him from his office, under chapter 436 of the Laws of 1877, whilst the counsel for the supervisors argues that it could not be, because the proceedings before the governor is "a criminal prosecution."

I am unable to agree with the learned counsel for the supervisors, that a proceeding by the governor, for the removal of a delinquent county treasurer, is "a criminal prosecution." Sections 4, 5 and 6 of the old Code (they are unrepealed) do not apply to a proceeding by the governor against a public officer, and this is clearly shown by section 1, which divides remedies in the "*courts of justice*." Any action which the chief executive of the state may take for the protection of the people, by the removal of a public officer, is neither a civil or criminal prosecution, both of which must be originated and prosecuted in the courts. This is not only apparent, it seems to me, from the nature of the acts, and section 1 of the Code, but the definition of "a criminal

action," by section 6 thereof, also involves it. That section reads : " A criminal action is prosecuted by the people of the state, as a party, against a person charged with a public offense, for the punishment thereof." In a proceeding by the governor, under the act of 1877, the people do not appear "*as a party*," nor is it "*for the punishment*" of an offense. It is true that the person removed from office may suffer a loss by the removal, but that loss is not inflicted as a " punishment," but to protect the public against official misconduct. Other statutes exist to punish malfeasance in office, which are enforced through the courts, but the governor, though in certain cases and for certain purposes he must exercise judicial functions, has no power, either constitutional or statutory, to convict and punish for crime. That power rests with the judiciary only. Neither, as has already been said, are the people " a party " to the proceeding for the removal. It is an executive act, which though founded upon complaint, is *by* the executive, to which there is no formal prosecuting party on the record. The law regards the governor as the initiator of the action for the protection of the people, though individuals may have called his attention to official misconduct.

It seems to me entirely clear that the act of 1858 does not prevent the evidence to be given by Dickinson from being used by the governor for his removal, and that, therefore, the rule laid down in *Henry* agt. *Salina Bank* (1 *N. Y.*, 83, *page* 86), that a witness "is not bound to speak when the answer may subject him to a forfeiture, *or any thing in the nature of a forfeiture* of his estate or interest," would exonerate the witness from answering the questions propounded.

The conclusion I have reached renders the examination of the question of constitutional power in boards of supervisors, or its committees, to compel the giving of testimony unnecessary. The constitutionality of the statutes conferring it was somewhat questioned by me in *Matter of Pilsbury* (56 *Howard*, 290), and upon it no opinion is now expressed,

further than to say that it involves a question worthy of most serious discussion.

The attachment will be discharged upon the sole ground that Mr. Dickinson cannot be compelled to answer the questions propounded by the committee of the board of supervisors, for the reasons hereinbefore stated.